**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**MARVIN SPRY,**

Petitioner,

**v.**                                                    **Civil Action No.: 3:23-CV-108
(GROH)**

**HEATHER L. RAY,**

Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On April 27, 2023, the Petitioner, filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging the calculation of his sentence imposed in the Southern District of West Virginia. ECF No. 1 at 5, 11.[1] The Petitioner is currently housed in the Northern District of West Virginia at Hazelton FCI in Bruceton Mills, West Virginia.[2] On May 12, 2023, Petitioner paid the filing fee. ECF No. 4.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied and dismissed with prejudice.

---

[1] ECF Numbers cited herein refer to case number 3:23-CV-108 unless otherwise noted.

[2] See Bureau of Prisons Inmate Locator search https://www.bop.gov/inmateloc/.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Conviction and Sentence in the Southern District of West Virginia, case number 2:99-CR-233[3] ("Spry I")

On December 1, 1999, an indictment was returned which charged Petitioner with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). ECF Nos. 18, 52. The Petitioner entered a plea of guilty on February 7, 2000, to Count 1 of the indictment. ECF No. 44. The Petitioner was sentenced to 71 months of imprisonment on June 26, 2000, but the judgment was not entered until June 28, 2000. ECF No. 52.

### B.    Conviction and Sentence in the Southern District of West Virginia, case number 2:01-CR-11[4] ("Spry II")

On December 1, 1999, an indictment was returned which charged the Petitioner in Counts One through Six with various drug trafficking offenses. ECF No. 1. A superseding indictment was returned on March 28, 2001, which charged the Petitioner in Counts One through Seven with various drug trafficking, money laundering, and witness intimidation offenses.  ECF No. 74. The Petitioner was convicted on June 4, 2001, of all seven counts of the superseding indicted following a jury trial. ECF No. 164. The Petitioner was sentenced to an aggregate term of 140 years on September 19, 2001, although the judgment was not entered until September 24, 2001. ECF No. 218. Following an appeal, the Fourth Circuit affirmed the Petitioner's conviction and sentence on May 23, 2002. ECF Nos. 286, 290.

---

[3]  Throughout section II.A. all ECF numbers refer to entries in the docket of Criminal Action No. 2:99-CR-233 in the Southern District of West Virginia. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[4]  Throughout section II.B. all ECF numbers refer to entries in the docket of Criminal Action No. 2:01-CR-11 in the Southern District of West Virginia.

By order of sentence reduction entered July 29, 2022, the Petitioner's sentence was reduced from 140 years to:

> 360 months, with credit for time served, consisting of 360 months for Count One, 240 months for Count Two, 240 months for Count Three, 60 months for Counts Four and Five, 120 months for Count Six, and 360 months for Count Seven, with the terms of imprisonment for all of the seven counts to be served concurrently, *provided that*, in no event is the reduced term of imprisonment less than the term of imprisonment the defendant has already served period.

ECF No. 733 at 1.

### C.    Instant Petition for Habeas Corpus Under § 2241

The Petitioner's sole claim for relief is that his two sentences, which were ordered to be served concurrently with one another, were not properly credited by the Bureau of Prisons ("BOP"). ECF No. 1 at 5. According to the Petitioner, he was to receive credit for time already served and jail credit. Id. Petitioner contends that the BOP has repeatedly recalculated his sentence, and he has received various expiration of sentence dates from the BOP. Id. at 7–10. Further, the Petitioner complains that his 30-year sentence imposed on July 29, 2022, was computed by the BOP to be a 31-year, 2-month, and 24-day sentence. Id. at 9–10. Petitioner complains that his sentence as computed by the BOP is only concurrent in part, which he contends contradicts the order for sentence reduction. Id. at 10. As relief, the Petitioner asks this Court to direct the Bureau of Prisons to restore his calculation of sentence "to reflect a 360 month sentence, using the BOP's own original calculation . . . with full term expiration of 6/24/2030, and statutory GCT calculation of 2/25/26, before First Step Act Credit of one year." Id. at 11.

On June 7, 2023, the Respondent filed a motion to dismiss, or in the alternative for summary judgment, along with a memorandum and exhibits in support. ECF Nos. 8, 9, 9-

1. In her memorandum, the Respondent argues that the Petitioner is not entitled to relief under § 2241 because his sentence is properly calculated, and he has received all the time credit to which he is entitled. ECF No. 9 at 5–7.

The Respondent argues that Petitioner's credits have been properly applied pursuant to 18 U.S.C. § 3584(c). ECF No. 9 at 6–7. That statute provides that, "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." The Respondent asserts that the Petitioner was sentenced to 71 months in case 2:99-CR-233 on June 26, 2000, and to 360 months in case 2:01-CR-11 on September 19, 2021. ECF No. 9 at 2, 6. Further, the Respondent argues that pursuant to 18 U.S.C. § 3584, the two terms must be administratively aggregated into a single term of imprisonment. Id. at 6.

The Respondent then explains the aggregation process which consists of: (1) determination of the Expiration Full Term ("EFT") date for each sentence [Id.]; (2) determination of the period which the EFT of the second imposed term exceeds the EFT of the first imposed term[5], in the Petitioner's case that period was 25 years, 3 months and

---

[5] The Bureau of Prisons calls this period of time the "concurrent overlap". ECF Nos. 9 at 6, 9-1 at 3. The *Merriam-Webster Dictionary* defines "overlap" as an intransitive verb which means, "to occupy the same area in part" or "to have something in common." https://www.merriam-webster.com/dictionary/overlap. The *Cambridge Dictionary* provides three definitions for "overlap" as a verb, the first two of which mean "to cover something partly by going over its edge; to cover part of the same space," and "if two or more activities, subjects, or periods of time overlap, they have some parts that are the same." https://dictionary.cambridge.org/us/dictionary/english/overlap Further, the *Cambridge Dictionary* defines "overlap" as a noun to mean, "the amount by which two things or activities cover the same area." Id.

It appears that the BOP uses the term "concurrent overlap" to refer to the time period which the sentence terms do not overlap, but rather the period where one concurrent sentence extends beyond the term of another concurrent sentence. The Court notes that the term "concurrent overlap" appears nowhere in the United States Code, or Code of Federal Regulations. Only eleven federal cases nationwide mention the term "concurrent overlap," ten of which concern federal sentencing. Of those ten cases, six contain the phrase in quotation marks. See Aiken v. Coleman-Medium, No. 5:09-CV-261-OC-36GRJ, 2010 WL 3927702, at *2 (M.D. Fla. Oct. 4, 2010); Hicks v. Mitchell, No. C/A 0:09-2785-CMC, 2010 WL 2721276, at *1 (D.S.C. June 18, 2010), *report and recommendation adopted*, No. C/A0:09-2785-CMC-PJG, 2010 WL 2720942 (D.S.C. July 8, 2010); Norman v. Carr, No. 4:21-CV-586-P, 2021 WL 5086561, at *4 (N.D. Tex.

24 days [Id. at 6–7]; (3) the resulting aggregate term of confinement is 31 years, 2 months, and 24 days [Id. at 7]; (4) the aggregation process benefits the Petitioner because if no aggregation occurred, the 360-month Spry II sentence would commence "on top" of the already running 71-month Spry I sentence, thus any good conduct time which the Petitioner earned on the Spry I sentence before the imposition of the Spry II sentence would have effectively been lost under the Spry II sentence [Id.]; (5) by aggregating the terms of incarceration, all good conduct time earned before and after the imposition of sentence in Spry II, and prior earned custody credit on Spry I may be applied to reduce the Petitioner's release date [Id.].

The BOP, consistent with the sentencing court's order, calculated that the Petitioner's sentence in Spry I commenced on the date of his federal sentencing, June 26, 2000, and was given credit for the one day he was in custody, November 12, 1999, prior to sentencing. ECF Nos. 9 at 2, 9-1 at 2, ¶ 6. Following his September 19, 2001, sentencing in Spry II, the BOP calculated the Petitioner's second sentence to commence on that date. ECF Nos. 9 at 6, 9-1 at 3, ¶¶ 13, 15. The BOP aggregated the sentences in Spry I and Spry II, finding that Expiration Full Term (EFT) date of Spry II exceeded the EFT date of Spry I by 25 years, 3 months, and 24 days. ECF Nos. 9 at 6, 9-1 at 3, ¶ 15.

---

Nov. 2, 2021); Quinn v. Rivera, No. 2:15CV00080 BSM/JTR, 2016 WL 8710972, at *1 (E.D. Ark. Jan. 29, 2016); Roach v. Warden FCI Oakdale, No. 16-CV-1645, 2017 WL 4508903, at *2 (W.D. La. June 22, 2017), report and recommendation adopted, No. 16-CV-1645, 2017 WL 2987162 (W.D. La. July 12, 2017), aff'd sub nom. Roach v. United States, 732 F. App'x 325 (5th Cir. 2018); Taylor v. Holt, 309 F. App'x 591, 592 (3d Cir. 2009).

Further, the term "concurrent overlap" appears only four times in any of the Bureau of Prisons Program Statements. All four of those appearances are in Bureau of Prisons Program Statement 5880.28 https://www.bop.gov/policy/progstat/5880_028.pdf, at p. 83–84, in examples 3 and 4 of calculation of sentences which include an 18 U.S.C. § 924(c)(1) count. Finally, the term "concurrent overlap" is never defined in the program statement.

The Respondent further explains that the Petitioner's concurrent sentence in Spry II could not begin to run until the date that sentence was imposed, on September 19, 2001. Accordingly, starting on that date, the Petitioner received credit toward his sentence in both Spry I and Spry II, until the expiration of the sentence in Spry I. ECF No. 9 at 7.

On September 20, 2023, the Respondent filed a Supplemental Memorandum in support of her motion to dismiss [ECF Nos. 14, 14-1] in an effort to clarify the Petitioner's sentence calculation. The certificate of service reflects that the Supplemental Memorandum was served on the Petitioner by first class United States mail on September 20, 2023. ECF No. 14 at 3.

The Petitioner filed a response styled "Petitioner's Objection to Supplemental Memorandum in Support of Motion to Dismiss" to the motion to dismiss on September 29, 2023. ECF No. 15. Therein the Petitioner claims that he did not receive copies of Respondent's motion to dismiss and memorandum. ECF No. 15 at 1.[6] Further, the Petitioner asserts that his two cases were related and inextricably intertwined[7] and that the credit for "the overlap of both concurrent sentences should begin with the time spent in custody on sentence for 2:99-CR-233 [Spry I]." ECF No. 15 at 2. The Petitioner contends that BOP properly calculated his 140-year sentence in Spry II, but that upon the reduction of that sentence to 360 months, the BOP improperly calculated his sentence.

---

[6] On June 20, 2023, the Petitioner filed his objection to this Court's Order and Roseboro Notice asserting that he did not receive Respondent's motion to dismiss or for summary judgment. ECF No. 13. By order entered October 30, 2023, the Court directed the Clerk to mail copies of ECF Nos. 8, 9, 9-1, 14, and 14-1 to Petitioner by certified mail, return receipt requested. The docket notes that the documents were sent via certified mail on October 30, 2023. A review of the United States Postal Service tracking tool shows that certified mail item 7022 1670 0001 8708 4887 was picked up at the post office at 8:22 a.m., on November 3, 2023, in Bruceton Mills, West Virginia. https://tools.usps.com/go/TrackConfirmAction_input.

[7] The Petitioner misspells this phrase as "inorexibly intertwined", but the Court liberally construes his argument. ECF No. 15 at 1.

The Petitioner argues that "[t]he sentence was not a part-consecutive-part concurrent sentence." Id. Further, he contends that when the BOP recalculated his sentence following his reduction from 140 years to 360 months, the BOP failed to grant him prior custody jail time. Id. The Petitioner asserts that upon that recalculation the BOP initially calculated his sentence correctly, but that the BOP recalculated his sentence and added one year, two months and 27 days to his sentence, which is the period he now contests. Id.

The Respondent did not file a reply.

By Order entered October 30, 2023, the Petitioner was mailed copies of Respondent's motion to dismiss or for summary judgment, supporting memorandum, and supplemental memorandum [ECF Nos. 8, 9, 9-1, 14, and 14-1], and was directed to file a response to the motion to dismiss or for summary judgment not later than November 13, 2023. ECF No. 16. Consistent with that Order, the Clerk sent copies of ECF Nos. 8, 9, 9-1, 14, and 14-1 to the Petitioner on October 30, 2023. The Petitioner has not filed any further response.

### III.    LEGAL STANDARD

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b)

Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B.     Post-Conviction Remedies and Relief

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction. By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. "As we noted in *O'Brien* [*v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005)], the 'essence of habeas corpus is an attack by a person in custody upon the legality of that custody' and 'the traditional function of the writ is to secure release from illegal custody.'" Obando-Segura v. Garland, 999 F.3d 190, 194 (4th Cir. 2021), quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

### C.     Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Although a complaint need not contain detailed factual allegations, a plaintiff's

8

obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a

9

plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

> **D.    Motions for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon

mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

Because the Petitioner is challenging the computation of his sentence, the consideration of his claims under § 2241 is appropriate. The United States Supreme Court has long recognized that 18 U.S.C. § 3585(b) does not authorize a district court to

compute a defendant's jail credit at sentencing. <u>United States v. Wilson</u>, 503 U.S. 329, 334 (1992). Rather, it is the United States Attorney General, acting through the BOP, who is responsible for computing an inmate's term of confinement. This computation includes the determination of when the sentence commenced and the amount of credit for time served following a federal conviction and sentencing. <u>Id.</u> at 333.

Under the provisions of 18 U.S.C. § 3584(c), "[m]ultiple terms of imprisonment which are ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." Further, in computing an inmate's sentence, the BOP must adhere to 18 U.S.C. § 3585 which provides as follows:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence, at the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the defendant was arrested; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

In <u>Wilson</u>, the Supreme Court expressly rejected Wilson's argument that § 3585(b) authorizes a district court to award credit at sentencing, reasoning that:

> Section 3585 indicates that a defendant may receive credit against a sentence that "*was imposed.*" It also specifies that the amount of the credit depends on the time that the defendant "*has spent*" in official detention "prior to the date the

> sentence commences." Congress' use of a verb tense is
> significant in construing statutes. By using these verbs in the
> past and present perfect tenses, Congress has indicated that
> computation of the credit must occur after the defendant
> begins his sentence. A district court, therefore, cannot apply
> § 3585(b) at sentencing.

Wilson, supra, at 333 (emphasis in original, internal citations omitted).

In the instant case, the Petitioner seeks concurrent credit for his Spry I and Spry II sentences, arguing that both sentences should be calculated to have commenced on June 25, 2000[8]. In his petition, the Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentences because he did not receive full concurrency for both sentences. ECF No. 1 at 5. In his response to the Respondent's supplemental memorandum, the Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence following the reduction in Spry II, and that BOP should have given him concurrency credit toward both his federal sentences for the entirety of his period of incarceration starting on the date his first sentence was imposed. ECF No. 15 at 2.

The Petitioner's service of his sentence in Spry I, prior to the imposition of his federal sentence in Spry II prohibited him from receiving simultaneous credit for his sentence in Spry II. Consistent with 18 U.S.C. § 3585(b), a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." At the time that the Petitioner's sentence in Spry II was imposed, September 19, 2001, the Petitioner was already in custody for his sentence in Spry I. Accordingly, pursuant to § 3585(b), the Petitioner was ineligible to receive credit for his

---

[8]  This date is one day before the imposition of the Petitioner's sentence in Spry I, and includes the one day of prior jail credit for November 12, 1999.

13

Spry II sentence for time spent in custody prior to imposition of that sentence, because he was already receiving credit for that time toward Spry I.

Other federal courts which have considered similar federal sentences which are ordered to run concurrently have explained the calculation of sentence this way:

> Although inmate Kuhn's federal sentences are running concurrently, her second judgment has a later date of imposition. And, neither of her federal sentences could have commenced prior to the dates they were imposed. . . . In essence, any time inmate Kuhn spent serving her initial sentence before March 13, 2018, must be added to her second sentence, because her second sentence could not commence prior to its imposition. In other words, running a sentence concurrent with an ongoing sentence does not allow for backdating the second sentence's commencement before its imposition.

Kuhn v. Hawkins, No. CV H-22-2307, 2023 WL 3763878, at *4 (S.D. Tex. May 31, 2023).

A review of the parties' exhibits explains their disagreement. The Petitioner submitted with his petition three Sentence Monitoring Computation Data ("Data Sheet") sheets, and the Respondent submitted one Data Sheet:

(1)    Data Sheet computed on August 7, 2022, attached to the Petitioner's petition, shows the Petitioner's sentence for Spry I to be 71 months. ECF No. 1-1 at 2.

(2)    Data Sheet dated August 17, 2022, also attached to the Petitioner's petition, lists the Petitioner's sentence for Spry I to be 71 months, and the Petitioner's sentence for Spry II to be 360 months. The August 17, 2022, Data Sheet lists the date the computation began as June 26, 2000, the date the Petitioner was sentenced in Spry I. ECF No. 1-1 at 5. Based on the date the computation began, the remarks in the Data Sheet read, "08-05-22

UPDTD COMP TO REFLECT SENTENCE REDUCTION FROM 141Y 2M 24D TO 360M, B/DWP." Id. at 6.

(3)     Data Sheet dated October 13, 2022, attached to the Petitioner's petition, further updates the computation of the Petitioner's sentence, and reflects an aggregate Term In Effect ("TIE") of 31 years, 2 months, and 24 days, based on the aggregated term of Spry I and Spry II. ECF No. 1-1 at 10–13. Moreover, the October 13, 2022, Data Sheet shows the Petitioner was sentenced on Spry I on June 26, 2000, and was sentenced on Spry II on September 19, 2001. ECF No. 1-1 at 10, 11.

(4)     Data Sheet dated June 6, 2023, attached to the Respondent's memorandum in support of her motion to dismiss or for summary judgment, shows that the Petitioner's sentence in Spry I was for a period of 71 months. ECF No. 9-1 at 11. Further, the Data Sheet shows that the Petitioner's sentence in Spry II, case number 2:01-CR-11, was initially for a period of 140 years, consisting of 40 years on Counts 1 and 7, 20 years on Counts 2 and 3, five years on Counts 4 and 5, and 10 years on Count 6, with those sentence to run consecutively to one another, but concurrently with the sentence in Spry II. Id. at 14. That sentence was calculated to have a "concurrent overlap" total time of 141 years, 2 months, 23 days. Id. However, as of April 27, 2020, that calculation was updated with Good Conduct Time pursuant to the First Step Act. The Data Sheet further notes that on August 5, 2022, the computation was updated to reflect the

Petitioner's sentence reduction with a TIE of 31 years, 2 months, and 24 days. Id. at 14, 18.

The Court recognizes that the BOP routinely recalculates sentences based on changes in inmates' earned time credit, loss of good conduct time, and the law. It appears that following the Petitioner's reduction of sentence in Spry II, the Bureau of Prisons on August 17, 2022, initially calculated the Petitioner's Spry II sentence to commence on the date of his sentencing in Spry I. However, it appears that calculation was improper and the BOP in the October 13, 2022, and June 6, 2023, Data Sheets corrected its error of using the Spry I sentencing date in the reduction of sentence in Spry II.

For these reasons, the Petitioner was not eligible to obtain credit for time served *prior* to commencement of his sentence in Spry II, because he was already receiving credit for that time toward his sentence in Spry I. Accordingly, the BOP, appropriately determined the date that Petitioner started serving his sentence in Spry II was the date his sentence was imposed in in that case, consistent with the provisions of 18 U.S.C. §§ 3585(b).

Although Petitioner asserts that the Bureau of Prisons incorrectly calculated his sentence, and refuses to grant him concurrent credit for time served in custody under his sentence in Spry I, it is clear from 18 U.S.C. §§ 3584 and 3585, and the holding of Wilson, that neither the warden nor the Court calculate sentences for federal inmates. That task is the exclusive responsibility of the Bureau of Prisons, and it pursuant to the holding of Wilson this Court may not usurp the Bureau of Prisons' authority. Moreover, the Court's review of § 3585 shows that Petitioner's 360-month sentence was properly calculated to commence on the date he was sentenced in Spry II, and which was ordered to be served

16

concurrently with the sentence imposed in Spry I. Thus, Petitioner has received all custody credit in Spry II to which he was entitled, and his request for relief is without merit.

## V.  RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE.**

It is further **RECOMMENDED** that Respondent's motion to dismiss or for summary judgment [ECF No. 8] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        November 16, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE